UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | | |
|---|---|---|---|
| ANTHONY JOSEPH LACY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 2:21-CV-145-CLC-CRW |
| | ) | | |
| CARTER COUNTY SHERIFF'S OFFICE, | ) | | |
| JAMES PARRISH, MIKE PARRISH, | ) | | |
| DEXTER LUNCEFORD, and MIKE | ) | | |
| LITTLE, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION

Plaintiff, an inmate in the Riverbend Maximum Security Institution ("RMSI"), has filed a pro se complaint for violation of 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*] will be **GRANTED**, and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

### I. FILING FEE

As it appears from Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*] that he is unable to pay the filing fee, this motion will be **GRANTED**.

Because Plaintiff is incarcerated in RMSI, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Greeneville, Tennessee 37742 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the

full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at RMSI, the Attorney General for the State of Tennessee, and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.     COMPLAINT SCREENING

### A.  Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausibly claim. *Twombly*, 550 U.S. at 570.

However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B. Complaint Allegations

Plaintiff first states that he seeks relief for violations of his "human rights," as well as his rights to "privacy" and not to be sexually raped or "illegally imprisoned" [Doc. 2 p. 3]. He next claims that "[t]hey have killed multiple inmates at [Morgan County Correctional Complex ("MCCX") including my Grandfather Wayne Russell Lacy, and Attempted[1] to kill me" [*Id.* at 4]. Plaintiff specifies that "[t]hey used a drug to kill my Grandfather in 2018, They drove him to the hospital multiple times and put him in the nursing home in Feb of 2018 and had a nurse that works at Carter County Justice Center kill him. [Defendant] Mike Parrish was the warden at [MCCX] hiding and secretly working for them" [*Id.*]. He then states that Defendant

> Mike Parrish secretly became a warden at MCCX and killed my Grandfather, then two years later tr[i]ed to kill me and killed ten other inmates in the process, And Attempted to murder me, they Also Attempted to murder DeMetriece Cordell at North West State Prison and Mike Parrish was the Warden there. Then come to kill me. And now currently threatening my family. He is the brother of James Parrish.

[*Id.*].

According to Plaintiff, the events related to his grandfather occurred between February 1, 2018, and February 25, 2018, and the events related to Plaintiff began on August 28, 2020, and are continuing, as "now at [RMSI] they Are still watching [him]" [*Id.* at 5]. Plaintiff then claims that

---

[1] Plaintiff's handwriting combines upper- and lower-case letters, and, while it is somewhat unclear, it appears that Plaintiff may use capitalization to emphasize certain words in his writing. Accordingly, the Court has endeavored to transcribe Plaintiff's writing from his complaint in a manner that incorporates his intended capitalization of letters.

"they killed ten other inmates at MCCX And Are threatening my family" [*Id.* at 5]. Specifically, Plaintiff states that:

> [T]hey put a Drug in my food for 3 Months and I have writeups to prove how it affected me, WARDEN Mike Parrish Administered this Drug through a C.O. that is now a nurse here. Charles Elsea 282882 WAs helping them Do this and Cole Davis and Marines Rankin, and Teresa Hampton, Elighia hamton, All C.O.'s at [MCCX] and my uncle Darren Lacy. Dale Cornett is involved, Mason Cornett, Carla Cornett, Micheal Arnett, Alannah ESTES, Asley [H]eynes, [t]hey are all [Tennessee Department of Correction ("TDOC")] employees that human Traffic[k]ed me to prison for Money And I'm sure I'm not the only one.

[*Id.*].

Plaintiff further states that his injuries include the death of his grandfather, a year of torture that is still ongoing, and sixteen inmates dying at MCCX [*Id.*]. He also claims that "I was Raped and Currently have a[] [sexually transmitted disease], I was roofied" [*Id.*].

Plaintiff also states that he grieved his claim about "them having this in my vent and torturing me with sexual talk and it went to the Warden then to the Commissioner and they shipped me here" [*Id.* at 6]. Plaintiff next includes a handwritten narrative with his complaint in which he claims that Defendant

> Carter County Sheriff's Office[] is Bragging About Killing my Grandfather and Grandmother in An Attempt to Cover up them stealing my identity and check from my Birth Defect and Brain surgery. And Has Been Watching me since I was a Baby, with this Device they Have in my vent, THAT CAN SEE THRough my eyes and read my Thoughts. Lawyer from CARTER County Named Cash is in on it And Has Filed paper work to steal my Identity, CH[IE]F Deputy James Par[r]ish, Sheriff Dexter Lunsford, and Morgan County[']s WARDEN Mike Par[r]ish is in ON IT AND WATCHing Me, Day and Night This HAS Been going on for 11 months with A speaker and Since 2017 with[]out me knowing. AND they murdered my Grandfather on 2/25/18 there At this facility. I Have no knowledge of me Receiving a check from my Birth NOR Has my family. It's All a sc[h]eme and they murdered my Grandmother for claiming me as a Dependent. And came and ATTEMPTED to Murder Me for filing my Stimul[us] Check. I NEED **immedi[a]te** LEGAL HELP FRom Someone WHO is TRUST WORTHY AND capable of HAND[]Ling this situation please.

[*Id.* at 7].

Plaintiff then includes a two-page letter from himself to a girl named "Brandi" in his complaint [*Id.* at in 9–10]. The only potentially relevant portions of this letter are his allegations that "they" are monitoring him with a device that can see through his eyes and read his thoughts [*Id.* at 9] and he is being watched and tortured [*Id.* at 10]. Plaintiff also includes a letter from himself to William J. Haynes in which he states that he has legal evidence that he was not released to a

> C.D.R.C. program, and they said I was dead here at Morgan Co. pr[i]son. They said I have no rights and I have evidence on why I am still here and Need im[med]iate attention on my case. and my legal advisor fred Arnett, will help me and has all of the[ir] investigation on file, He said correct. I have Made Copies of my Monitor system in my cell and they have threatened me and my entire family and Charles elsea has Been trying to Kill Me, and I Need Help in this Matter as soon as possible. Please Let me Know something as soon as possible I'm gonna Make a copy of this to ensure this makes this to you[] Because I am in danger.

[*Id.* at 11].

Plaintiff has sued the Carter County Sheriff's Office, Chief Deputy James Parrish, Warden Mike Parrish, Sheriff Dexter Lunceford, and Captain Mike Little [*Id.* at 1, 2–3]. Plaintiff states as follows regarding his requests for relief:

> They Broke my T.V[.], my neck[lace], and gave me a concussion. I want them All fired and I want charges pressed on them all for the Death of my Grandfather and those inmates, and the Attempted Murder on my Life and them still threatening me, and wrongful imprisonment of my mother April Lacy immediately following the Death of her Grandfather. She is in prison in Texas for conspiracy And they put her there right after paw[']s death. April Dawn Lacy 53384-074 And I want my case reviewed and how they played a rol[e] in me being sentenced.

[*Id.* at 5].

### C. Analysis

First, the Court applies Tennessee's one-year statute of limitations to Plaintiff's § 1983 claim in this action. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (federal district

courts apply a state's statute of limitations to § 1983 claims); *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012) (noting that Tennessee provides one-year statute of limitations for § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(1)(B) (setting forth one-year statute of limitations for § 1983 claims). The incidents in Plaintiff's complaint regarding his grandfather occurred in February 2020, which is more than a year before he put his complaint in the hands of prison officials for mailing on September 20, 2021 [Doc. 2-1 p. 1[2]]. Therefore, Plaintiff's claims for relief under § 1983 arising out of incidents involving his grandfather are untimely and therefore fail to state a claim upon which relief may be granted under § 1983.

Also, to the extent that Plaintiff seeks relief for the alleged killings and/or other violations of the constitutional rights of other inmates, including his mother's alleged illegal imprisonment, Plaintiff does not have standing to assert the constitutional rights of other inmates. *Newsom v. Norris*, 88 F.2d 371, 381 (6th Cir. 1989). Thus, any such claims are not cognizable under § 1983.

Next, while Plaintiff has sued Defendant Mike Little, nothing in Plaintiff's complaint allows the Court to plausibly infer that this Defendant was personally involved in any violation of Plaintiff's constitutional rights. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983). Similarly, most of the allegations in Plaintiff's complaint do not contend that any named Defendant was personally involved in the alleged act and/or incident, and these allegations

---

[2] Plaintiff's complaint states that he signed it on September 26, 2021 [*Id.* at 20]. But that is impossible, since the Clerk received and docketed this pleading on September 20, 2021 [*See generally id.*]. Accordingly, the Court takes the date on which prison officials received the complaint as the date on which Plaintiff filed it. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (noting that the signing date on a pro se prisoner's pleading will be deemed to be the filing date, unless there is evidence to the contrary); *Houston v. Lack*, 487 U.S. 266, 270 (1988) (finding that a prisoner's action is filed on the date that it is properly delivered to the prison officials for mailing).

6

therefore fail to state a claim upon which relief may be granted under § 1983 as to any Defendant. *Id.*

Moreover, as to Defendant Mike Parrish, Plaintiff's remaining allegations are that (1) he was Warden at "North West State Prison" before becoming Warden of MCCX, at which point he tried to kill Plaintiff [*Id.* at 4]; (2) he "administered" a drug to Plaintiff in his food for three months in a manner that affected Plaintiff [*Id.* at 5]; and (3) he is "in on" the alleged acts of stealing Plaintiff's identity "and check from [his] Birth Defect and Brain surgery," as well as the alleged use of a device in Plaintiff's vent that can see through his eyes and read his thoughts [*Id.* at 8].

However, Plaintiff's allegations that Defendant Mike Parrish (1) tried to kill him and (2) administered a drug to him through his food for three months are conclusory and therefore fail to plausibly allege a violation of Plaintiff's constitutional rights, as Plaintiff fails to include any specific facts about these acts, the drug at issue, any resulting harm, or any other relevant circumstances surrounding these acts. Thus, Plaintiff has failed to "nudge[] [these claims] across the line from conceivable to plausible" as to Defendant Mike Parrish. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (holding that "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a plausible claim for relief). Moreover, even if the Court considers these allegations together as a claim that Defendant Mike Parrish put a drug in Plaintiff's food for three months in an effort to kill him, this claim is likewise so general and conclusory that it does not allow the Court to plausibly infer that Defendant Mike Parrish violated Plaintiff's constitutional rights. *Bell Atl. Corp.*, 550 U.S. at 570; *Ashcroft*, 556 U.S. at 681.

Plaintiff's remaining allegations against Defendant Mike Parrish are that he is "in on" the alleged acts of stealing Plaintiff's identity "and check from [his] birth defect and brain surgery,"

7

as well as the alleged use of a device in Plaintiff's vent that can see through his eyes and read his thoughts [*Id.* at 8]. These also are the only specific allegations Plaintiff makes in his complaint against Defendants James Parrish and Dexter Lunceford [*Id.*]. However, these allegations are delusional and rise to the level of "irrational" or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Accordingly, they fail to state a claim upon which relief may be granted under § 1983 as to any Defendant. *Id.*

The only remaining Defendant is thus Carter County Sheriff's Office, which Plaintiff alleges has been "bragging" about killing his grandfather to cover up for stealing his identity and a check from his birth defect and brain surgery and has been watching him through a device since he was a baby [*Id.*]. However, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a municipality may be liable for civil damages under § 1983 only when the execution of its policy or its toleration of a custom causes the deprivation of a constitutionally protected right. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691). As nothing in Plaintiff's complaint allows the Court to plausibly infer a custom or policy of Defendant Carter County Sheriff's Office caused any violation of his constitutional rights, the complaint fails to state a claim upon which relief may be granted under § 1983 as to this municipality.

Thus, the complaint fails to state a claim upon which relief may be granted as to any named Defendant.

Even if Plaintiff's complaint adequately stated a claim for relief under § 1983 as to any Defendant, in the "Relief" section of his complaint, Plaintiff states that "[t]hey broke my T.V[.], my neck[lace], and gave me a concussion" before requesting that all Defendants be fired, to press

8

charges against Defendants, and for relief from his own and his mother's sentences [*Id.* at 5]. None of these requests for relief are cognizable under § 1983.

First, to the extent the Court can liberally construe Plaintiff's allegation that "they" broke his television and necklace as seeking relief from any named Defendant, the United States Supreme Court has held that a state employee does not violate the Due Process Clause of the Fourteenth Amendment when he randomly deprives an individual of property, provided that the State makes available a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Plaintiff has not pleaded that Tennessee's post-deprivation procedures are inadequate to remedy these alleged takings as required to state a plausible constitutional claim based on the takings. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Additionally, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing Tenn. Code. Ann. § 29-30-101 and § 29-30-201).

Next, as to Plaintiff's request for termination of the individual Defendants, the Court has no authority to require any entity to fire these Defendants. *Dickson v. Burrow*, No. 5:19-CV-P163-TBR, 2019 WL 6037671, at *2 (W.D. Ky. Nov. 14, 2019) (citing *Ross v. Reed*, No. 1:13-cv-143, 2013 WL 1326947, at *2, 2013 U.S. Dist. LEXIS 44697 at *5–6 (S.D. Ohio Mar. 5, 2013) for its holding that "[t]he Court has no authority under § 1983 to direct the . . . police department to initiate any disciplinary proceedings against its employees" and *Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at *4, 2010 U.S. Dist. LEXIS 14253 at *10–11 (W.D. Mich. Feb. 18, 2010) for its holding that a court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]").

9

As to Plaintiff's request for prosecution of the individual Defendants, Plaintiff has no legal right to the prosecution of anyone. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (providing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) (noting the absence of law allowing a § 1983 action to force the state to prosecute).

Further, as to Plaintiff's request for relief from his mother's imprisonment, as set forth above, Plaintiff has no standing to assert his mother's constitutional rights as to her alleged wrongful imprisonment. *Newsom v. Norris*, 88 F.2d 371, 381 (6th Cir. 1989).

While Plaintiff also seeks relief from his own case or sentence, he has not set forth any factual allegations to support any such claim. Even if the Court assumes Plaintiff could do so, this claim for relief is not cognizable under §1983. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (providing that a § 1983 action challenging an underlying conviction or sentence "is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration"); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that an inmate alleging entitlement to speedier release must pursue such relief through habeas corpus action, rather than § 1983).

Accordingly, even liberally construing the complaint in Plaintiff's favor, it fails to state a claim upon which relief may be granted under § 1983, and it will be **DISMISSED**.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**;

2. Plaintiff will be **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Attorney General for the State of Tennessee, and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER**.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**